Stoey, Justice,
delivered the opinion of the court. — This is a libel for an asserted forfeiture, founded on a violation of the 27th section of the act of 31st of December 1792, e. 146, concerning the registering and recording of ships and vessels, (a) The libel charges, that the certificate of registry or record of the schooner, made to one John C. King, as owner, was fraudulently or knowingly used for the said schooner, on a ‘‘voyage at and from Baltimore to Cayenne, and at and before her subsequent arrival at New Orleans, she not being entitled to the benefit thereof. The claimant put in a denial to the allegation of forfeiture ; and upon a hearing *180 in the district court of Louisiana, a decree of condemnation was pronounced, upon which an appeal has been taken to this court.
The facts of the case are these : The vessel sailed from Baltimore, about the first of August 1820, under the command of a Captain James Smith, having on board a Mr. Desmoland, who was owner of a part of the cargo, and being bound on a voyage to Cayenne. A letter of instructions was delivered to the master by the ostensible owner, John C. King, which, among other things, after stating the voyage, and ordering a delivery of the cargo agreeable to the bill of lading, contained the following directions : “ Mr. Joseph Desmoland, who goes out in the vessel, will provide you with everything necessary for that purpose. You will, as soon as you are required by this gentleman, deliver to him the schooner Luminary, with her boats, &c., having care to retain in your possession the register, and every other paper. Mr. Desmoland will discharge the crew agreeably to the laws of the United States; and this also you will be careful to see executed, and bring your proof thereof. As to youx-self, Mr. Desmoland is to pay you according to agreement, that is to say, your wages due, and two months extra, sixty dollars per month. The remainder of the crew to receive the like pay, that is to say, two months *extra wages.” “ You will, also, during the whole voyage, abide by and follow the instructions of Mr. J. Desmoland.”
It is difficult to read this letter, and not at once perceive, that the voyage of the vessel was to end at Cayenne, and that her master and crew were to be discharged, the register separated from the vessel, and all the usual proceedings had, which are contemplated by our laws, where a vessel is transferred o.r sold in a foreign port. The vessel was thenceforth to be under the sole government and direction of Mr. Desmoland, and all authority and control of the former owner was to cease. The question naturally arises, how this could happen ? If the vessel was transferred to Mi’. Desmoland, at Baltimore, it admits of an easy explanation. If she was to be sold by him at Cayenne, for the account of the former owner, as his agent, it would seem moré consonant to the ordinary course of business, that the instructions should have been conditional, and should have stated the expectation of sale, and have provided for the event of an unsuccessful attempt of this nature. Mr. Desmoland would have been referred to as an agent, for there could be no reason to conceal that agency. At all events, the true nature of the case lies within the privity of King and Desmoland ; and they have the full means to explain the transaction, if it be innocent. There must exist, in the possession of Mr. Desmoland, the documents under which he derived title from King, whatever that title may be ; and his silence, after the most amP^e opportunity for explanation, and for the production *of these papers, affords a strong presumption, that, if produced, they would not aid his cause or prove his innocence.
The schooner arrived at Cayenne, and from thence she was dispatched to New Orleans by Mr. Desmoland, under the command of the same master, with the same register, and was entered at New Orleans, as an American vessel. Mr. L’Amoureaux came on board her at Cayenne, and the laconic instruction given by Mr. Desmoland to the master, for the voyage, were in these words : “I hereby desire Captain James Smith, on his arrival at New Orleans, to deliver the schooner Luminary, with all her tackle, &c., to Fran- *181 §ois LAmoureaux, who goes in the same vessel. Cayenne, 1st of October 1820.” At Hew Orleans, Mr. LAmoureaux claimed the vessel as his own, and desiring to procure for her a new register, as an American vessel, he induced the master to execute a bill of sale to him of the schooner, for the sum of $1000, as agent of King, the former owner. The master, whose testimony is marked by the most studied attempts of evasion, admits, that he he had no authority from King to execute this bill of sale, that he never received any consideration for it, and that he gave it simply because Mr. Desmoland had given him the instructions above stated. He concludes, and the conclusion seems irresistible, if Mr. LAmoureaux ever obtained title to the property, and she is not now the concealed property of Mr. Desmoland, that he purchased her at Cayenne. Mr. LAmoureaux now claims her from the court as his own property, and as no *other origin is shown to his title, if he have any, it must be referred to a purchase while at that port. In what manner the purchase was made, and how the contract of sale was executed, are not disclosed ; yet the materiality of a full disclosure cannot be denied. If Mr. Desmoland sold in the name, and as agent of King, the bill of sale would show it, and Mr. LAmoureaux would possess it, among his muniments of title. If he sold as owner, then he .must have become so, before the schooner departed from Baltimore, and, of course, the vessel was sailing, during the whole voyage, under a register which she was not entitled to use, and under circumstances which the law prohibited. Why, then, has Mr. LAmoureaux kept from the eyes of the court his title deeds ? It they would not prove the justice of the suspicions, which the uncommon circumstances of the case necessarily excite, it seems incredible, that they should be suppressed. The suppression, therefore, justifies the court in saying, that the United States have made out a primd facie case, and that the burden of proof to rebut it, rests on the claimant.
But it has been asked, what motive could Mr. Desmoland, or Mr. LAmoureaux, have for this disguise? If no adequate motive could be assigned, it would make it more difficult to account for the extraordinay posture of the case. But as human motives are often inscrutable,- the inadequacy of any apparent cause ought not to outweigh very strong circumstantial evidence of a transfer. For if the facts are such, that they cannot be accounted for rationally, except upon the supposition of a *sale, there would be equal difficulties in rejecting the inference of that fact. But Mr. Desmoland may have had many motives to conceal the purchase. We do not know his national character, or his private situation. He might have been embarrassed ; his national character might have exposed him to capture or detention by ships of war; he might have wished to reserve the benefit of selling higher, by selling abroad to an American citizen, who could thus re-invest her with the American character. But if Mr. Desmoland were a Frenchman, and meant to carry on a trade with Hew Orleans, and to preserve the apparent American ownership, through the instrumentality of Mr. LAmoureaux (and this is not an unnatural presumption), then, he had an adequate motive for the disguise. The act of the 15th of May 1820, ch. 126, had imposed a very high tonnage duty on French vessels entering the ports of the United States ; and as this act was meant as a countervailing measure, to press heavily on French shipping, it was an important object, to evade the payment of that duty, by sailing under the *182 American flag. Row, Mr. L’Amoureaux has not. shown any title from Mr. Desmoland, and if he be the confidential agent of the latter, the whole proceeding is just what we should expect, with a view to this object. The apparent residence of Mr. Desmoland at Cayenne, fortifies this presumption. There would be no absurdity, though there would be illegality, in such conduct. The parties cannot complain, that the court, in a case left so bare of *all reasonable' explanation, construe their silence into presumptive guilt.

 Which provides, “ that if any certificate of registry, or record, shall be fraudulently or knowingly used for any ship or vessel, not then actually entitled to the benefit thereof, according to the true intent of this act, such ship or vessel shall be forfeited to the United States, with her tackle, apnarel and furniture.’’