STATE *ex rel.* CALDWELL v. HOOKER, *County Judge.*

No. 388.    Opinion Filed November 24. 1908.

(98 Pac. 964.)

1.    **STATUTES—Expression of Subject in Title.** An act (Laws 1907-
08, p. 594, c. 69), the general object of which was to prohibit the
manufacture, sale, barter, giving away, or otherwise furnishing
of intoxicating liquors, except as therein provided for medical,
industrial, and mechanical purposes, entitled "An act to establish
a state agency, and local agencies for the sale of intoxicating
liquors for certain purposes; and providing for referring same to
the people; prohibiting the manufacture, sale, barter, giving away
or otherwise furnishing of intoxicating liquors, except as herein
provided; providing for the appointment of an attorney, and for
the enforcement of the provisions of this act; making an appro-
priation and declaring an emergency"—is not in conflict with sec-
tion 57, art. 5 (Bunn's Ed. sec. 130), of the Constitution of Okla-
homa, because the title contained an abstract of the contents of
the act; the Constitution being satisfied if the act has but one
general subject, and that is fairly indicated by the title. It may

have many details, but if they all relate to the same general subject or object, they are properly included therein.

2.  **SAME.** The title may be expressed in general words, or it may be a brief statement of the subject, or it may be an index to, or an abstract of, the contents of the act.

3.  **CONSTITUTIONAL LAW—Construction—Intent.** In construing a provision of a Constitution, the primary inquiry is to ascertain the intention of the framers, and of the people who adopted the same, and in such construction and determination, technical rules should be disregarded, and, as a rule, a mean between a strict and a liberal construction followed.

4.  **SAME—Self-Executing Provisions—Supplementary Legislation.** Though a constitutional provision may be self-executing, yet legislation may be desirable for the better protection of the right secured, and to provide a more specific and convenient remedy for carrying out such provision.

5.  **SAME.** The only limitation, unless otherwise expressly indicated, imposed upon the Legislature in such legislation is that the rights guaranteed thereunder shall not be curtailed, or any undue burdens placed thereon. Supplementary legislation in particulars where, in itself, it is not as complete as may be desirable may be enacted.

6.  **SAME—Power of Legislature—Implied Limitation.** A restriction or limitation upon the power of the Legislature, upon any subject of legislation, will not be presumed or implied, unless from the entire instrument it clearly appears that it was so intended.

7.  **SAME—Limitation of Prohibition Article.** The prohibition article was not intended as a limitation or restriction upon the power of the people, through the initiative or the Legislature, to enact additional or supplemental legislation relative to the liquor traffic, except that no enactment should contravene the provisions of such ordinance.

8.  **STATUTES—Construction—Substitution of Words—"And"—"Or."** Whenever it is clear that either of the words "or" or "and" has been mistakenly used for the other, the word intended will be substituted for the one mistakenly used, so as to carry out the legislative intent.

9.  **SAME.** It is not that "or" is read "and," for "or" never means "and," but "or," when used by mistake for "and," should be substituted by "and"; the legislative intent imperatively so requiring.

10. **SAME.** Section 8, art. 3, of the enforcing act (Laws 1907-08, p. 606, c. 69), was evidently intended by the Legislature to follow the language of section 30, art. 2 (Bunn's Ed. sec. 39) of the Constitution, relative to search and seizure, and that the word "or" was inserted, either by the framer of the act or by the copyist,

State *ex rel.* v. Hooker, County Judge.

by inadvertence or clerical error; and, in order to carry out the evident legislative intent, the same will be construed by substituting the conjunctive particle "and" in the place of the disjunctive "or."

11.    **SAME—Construction—Change in Existing Law—Presumptions.** The presumption is that the legislature does not intend to make any change in the existing law beyond what is expressly declared; and, when an act creating a remedy or right does not prescribe the procedure therefor, it will be assumed that the general mode of procedure was intended, unless the same is expressly excluded.

12.    **JURY—Right to Trial by Jury—Seizure.** In trials as to property rights under section 6, art. 3, of the enforcing act (Laws 1907-08, p. 605, c. 69), claimants are entitled to the right of trial by jury.

(Syllabus by the Court.)

Original petition for mandamus by the State, on relation of Fred S. Caldwell, Counsel to the Governor, against Sam Hooker, County Judge of Oklahoma County. Writ awarded upon further application, in the event respondent failed to act.

On the 9th day of September, A. D. 1908, the relator, Fred S. Caldwell, as counsel for the Governor of the state, joined by Edward E. Reardon, county attorney of Oklahoma county, instituted this action in this court by petition, alleging that the respondent was the duly elected, qualified, and acting county judge of said county, and had been continuously since the 16th day of November, A. D. 1907; that on the 8th day of September, A. D. 1908, there was presented to said respondent, as county judge, an information or complaint, in due form, duly supported by the affidavit of Jas. L. Brown, and indorsed, respectively, by the county attorney and county judge of said county, as follows:

"Oklahoma City, Oklahoma, Sept. 8, 1908. I examined facts and recommend that warrant issue. [Signed] Edward E. Reardon, County Attorney."

"This showing presented to me in open court, and I refuse to issue the search warrant prayed for by Jas. L. Brown, for the reason that I hold the act referred to herein and under which the warrant is sought to be issued, to be unconstitutional and void under the Constitution of Oklahoma. Applicant excepts. Dated Sept. 8, 1908. [Signed] Sam Hooker, Co. Judge."

It is further alleged that said respondent, in failing to take jurisdiction and issue the search warrant prayed for, failed and refused to perform a duty imposed upon him by law as judge of said county court. It is further alleged that under the law all appeals from justices of the peace in Oklahoma county are returnable to the said county court, over which the respondent presides as judge, and that practically all prosecutions for violations of the laws of Oklahoma relating to the sale of intoxicating liquors are cognizable before said county court, and that said respondent, in holding the said act, commonly known as the "Billups' Bill," otherwise herein referred to as the "Enforcing Act" (Laws 1907-08, p. 594, c. 69), unconstitutional and void, renders it impracticable to enforce the provisions of said law in said county, and that the state has no other plain and adequate remedy except by mandamus. Wherefore the petitioners pray that this court take original jurisdiction and issue an alternative writ of mandamus to the said respondent, commanding him to assume jurisdiction and issue the search warrant as prayed for, or to appear before this court at a stated time and show cause, if any, why said writ should not be made final and peremptory.

*Fred S. Caldwell, J. L. Brown,* and *O. T. Smith,* for relator.
*J. H. Grant, C. W. Stringer,* and *E. G. McAdams,* for respondent.

WILLIAMS, C. J. (after stating the facts as above). It is necessary to pass on the following questions, in order to determine whether or not the writ should be awarded: (1) Whether or not the act entitled "An act to establish a state agency, and local agencies for the sale of intoxicating liquors for certain purposes; and providing for referring the same to the people; prohibiting the manufacture, sale, barter, giving away or otherwise furnishing of intoxicating liquors, except as herein provided; providing for the appointment of an attorney, and for the enforcement of the provisions of this act; making an appropriation and declaring an

emergency" (Laws 1907-08, p. 594, c. 69)—contravenes section 57, art. 5 (Bunn's Ed. § 130) of the Constitution of Oklahoma. (2) Is the prohibition article, submitted separately, and ratified at the same time the Constitution was, an implied limitation on the Legislature, and is section 1, art. 3, of the enforcing act, void for the reason that it exceeds such limitation? (3) Are the search and seizure provisions of the enforcing act (sections 5, 6, 7, 8, and 9, art. 3, Senate Bill No. 61, Sess. Laws Okla. 1907-08, pp. 605, 606, c. 69) in conflict with section 7, art. 2 (Bunn's Ed. § 16), of the Constitution? (4) Does section 8, art. 3, *supra,* of the enforcing act accord with section 30, art. 2 (Bunn's Ed. § 39), of the Constitution? (5) Does section 6, art. 3, of the enforcing act (Sess. Laws Okla. 1907-08, p. 605, c. 69), or any portion thereof, conflict with section 19, art. 2 (Bunn's Ed. § 28), or section 30, art. 7 (Bunn's Ed. § 193), of the Constitution?

1. The title of the enforcing act relates primarily to only one subject, namely, the prohibiting of the manufacture, sale, barter, giving away, or otherwise furnishing of intoxicating liquors, except as otherwise provided (which is for medicinal, industrial, or mechanical purposes). The establishment of such agency, or agencies, for furnishing such liquors for medicinal, industrial, or mechanical purposes, the providing for the appointment of an attorney to prosecute violations of said act, the referring of same to the people for their approval or rejection, the making of an appropriation to carry same into effect, and the declaring of an emergency are all referable and cognate to such subject expressed, and go to make up a complete enactment, or result as a complement of the main thought therein contained.

On February 7, A. D. 1893, the Legislature of Alabama passed an act:

"To regulate the business of building and loan associations in this state; to prohibit such associations from hypothecating and transferring their securities, unless such privileges be granted by the General Assembly; to require associations organized in other states and territories to deposit securities with the State Treasurer

in trust for their members and creditors, and prescribing how such securities shall be withdrawn, and requiring such association to pay a license of two hundred dollars per annum to the State Auditor for the use of the state; defining premiums, fines and stock taken to represent premiums; requiring associations to pay taxes; to require from associations from other states and territories the same obligations, requirements and prohibitions that such other states and territories require of associations organized in this state and doing business in such other states or territories; defining 'building and loan associations'; to require officers handling money to execute a bond; not to apply to associations confining their business to one county; to prescribe a penalty for doing business before complying with this act; and providing for associations already doing business which do not desire to comply with this act; foreign associations have until 1st day of June, 1893, to comply with this act; when to go into effect." (Acts Ala. 1892-93, p. 665).

In the case of *Lindsay v. United States Saving & Loan Association et al.*, 120 Ala. 172, 24 South. 171, 42 L. R. A. 783, the late Mr. Chief Justice Brickell, in delivering the opinion of the court, said:

"The title of the act is of rather peculiar construction. First, as is more usual, general words are employed to express the subject—'To regulate the business of building and loan associations in this state.' These general words are succeeded by an abstract or catalogue of the contents of the act, expressive of the matter of each section (except the repealing clause of laws in conflict with the act), descending to the section declaring that the act should take effect immediately on its passage and approval. The part or clause of the title to which the fifth section must be referred—for there is no other to which it can be referred—reads: 'Defining premiums, fines and stock taken to represent premiums.' The Constitution does not contemplate a mutiplicity of titles. It contemplates but one title, and leaves the form which may be given it to legislative discretion. It may be expressed in general words, or it may be a brief statement of the subject, or it may be an index to, or an abstract of, the contents of the act. The Constitution is satisfied if the act has but one general subject, and that is fairly indicated by the title."

The title of said act does not contravene section 57, art. 5

(Bunn's Ed. § 130), of the Constitution. *In re Petition of County Commissioners, ante,* p. 435, 98 Pac. 556; *Noble State Bank v. Hasvell et al., ante,* p. 48, 97 Pac. 590; *Pond Creek v. Haskell et al.,* 21 Okla. 711, 97 Pac. 338; *In re J. A. Menefee, Treasurer, et al. ante,* p. 365, 97 Pac. 1014.

2. Was it the intention of the framers of the Constitution of our state, in proposing and separately submitting the prohibition clause, that it should operate as a limitation upon the power of the Legislature, with respect to dealing with the liquor question? In construing same, the primary inquiry is to ascertain the intention of the framers, and of the people who adopted the clause under consideration, to determine which technical rules should be disregarded, and a mean between a strict and a liberal construction adopted. Cooley's Const. Lim. (7th Ed.) p. 93; 8 Cyc. 730; 5 Current Law, 622; 6 Am. & Eng. Law (2d Ed.) 921. This provision has been held by this court to be self-executing, capable of being put into operation without additional legislation. *Ex parte Cain,* 20 Okla. 125, 93 Pac. 974. Respondent contends, "Thus far will we go in the matter of prohibiting the legal traffic in intoxicating liquors, and no further," insisting that when the Constitution defines the circumstances under which a right may be exercised or a penalty imposed, the specification is an implied prohibition against legislative interference to add to the condition or extend the penalty to other cases. *Holley v. State,* 14 Tex. App. 508. In cases where a provision is self-executing, legislation may still be desirable, by way of providing a more specific and convenient remedy and facilitating the carrying into effect or execution of the rights secured, making every step definite, and safeguarding the same so as to prevent abuses. Such legislation, however, must be in harmony with the spirit of the Constitution, and its object to further the exercise of constitutional right and make it more available, and such laws must not curtail the rights reserved, or exceed the limitations specified. *Stevens v. Benson,* (Or.) 91 Pac. 578; *Reeves v. Anderson,* 13 Wash. 17, 42 Pac. 625;

*Beecher v. Baldy,* 7 Mich. 488; *Willis v. Mabon,* 48 Minn. 140, 30 N. W. 1110, 16 L. R. A. 281, 31 Am. St. Rep. 626; *People v. Draper,* 15 N. Y. 532; Cooley's Const Lim. (7th Ed.) 122; Ordronaux's Const. Legislation, 262-265. In creating the legislative department, and in conferring upon it the legislative power, the people must be understood to have conferred the full and complete power as it rests in, and may be exercised by, the sovereign power of any country subject only to such restrictions as they may have seen fit to impose, and to the limitations which are contained in the Constitution of the United States. The legislative department of a state is not made a special agency for the exercise of specifically defined legislative powers, but is intrusted with the general authority to make laws at discretion. Cooley's Const. Lim. (7th Ed.) 126.

By section 3 of the Enabling Act (Act June 16, 1906, c. 3335, 34 Stat. 269, p. 1), it was specifically provided by Congress that the constitutional convention, in forming a Constitution for the proposed state of Oklahoma, should provide therein that "the manufacture, sale, barter, giving away, or otherwise furnishing, except as hereinafter provided, of intoxicating liquors within those parts of said state now [then] known as the 'Indian Territory' and the 'Osage Indian Reservation' and within any other parts of said state which existed as Indian reservations on the first day of January, nineteen hundred and six, is prohibited for a period of twenty-one years from the date of the admission of said state into the Union. * * *" Such provision is incorporated *ipsis verbis* in section 7, art. 1 (Bunn's Ed. § 9), of the Constitution. The convention submitted practically the same provision, separately, to the voters of the state for ratification or rejection at the same time the Constitution was voted on, which was adopted, extending such provision to the entire state. It is presumed that the same was submitted with the same view that it was required by Congress to be incorporated in our Constitution, and that was certainly not with a purpose to limit, by implication, the power of the Legislature to

deal with the liquor question. Rigorous prohibition laws having been in force in the Indian Territory since the Five Civilized Indian Tribes had migrated there, it was considered obligatory by Congress that prohibitory laws should be required to be continued in such portions of the state as were, at the time of the admission of the state into the Union, Indian reservations, or under the exclusive control of the federal government. When Congress made it mandatory upon the Constitution framers that such a provision should be incorporated in the Constitution, it was certainly not with a view of limiting the power of the Legislature to act, except in so far that it could not pass legislation in conflict therewith. Further, Oklahoma as a state came into the Union under anomalous conditions, and without a parallel in commonwealth making. With practically 1,500,000 people—commercially, industrially, and agriculturally in a high state of development; the eastern half having had no local legislative body to frame laws to meet its wants, and there being such a diversity of interests in the proposed state—it became necessary that something more than general principles should be declared. As a result, in many instances provisions in their nature legislative, were ingrafted to meet the wants of the people and the requirements of the conditions prevailing therein. As a precaution, however, section 36, art. 5, *supra,* "that any specific grant of authority in this Constitution, upon any subject whatsoever, shall not work a restriction, limitation, or exclusion of such authority upon the same or any other subject or subjects whatsoever," was incorporated, to exclude the idea of the exclusion of power by implication.

Section 20, art. 16, General Provisions of the Texas Constitution of 1875, provides that the Legislature shall at its first session enact a law, whereby the qualified voters of any county, justice precinct, town, or city, by a majority vote, from time to time, may determine whether the sale of intoxicating liquors shall be permitted within the prescribed limits. When the organic law of a state fails to specifically authorize the Legislature to submit for

ratification or rejection by popular vote a proposed law, there is a contrariety of opinion as to whether or not such legislative power exists; the objection being that it was an attempted delegation of the trust to enact laws confided solely to the Legislature. Said section specifically grants and the right is conferred mandatorily upon the Legislature to pass an act enabling the people to adopt prohibition by election whenever they might desire to do so. There are three reasons why the case of *Holley v. State, supra,* is not applicable to this case: First, the Texas Constitution, 1875, does not contain a provision similar to that of section 36, art. 5, *supra;* second, nor does it contain the initiative and referendum provisions as appear in section 1-8, inclusive, art. 5 (Bunn's Ed. §§ 51-61, inclusive), and sections 4a-4e, inclusive, art. 18 (Bunn's Ed. §§ 415-419, inclusive), by which the right is reserved to the people of the state at large, and also to every county, district, city, and town therein, as to legislation properly belonging to such division or subdivision, to initiate or refer, by the proper legislative power of such state, county, district, or municipality, to the voters for their approval or rejection; third, the separate prohibition article resulted neither from any specific grant of authority, but the exercise, through the framers and the people, of the general power of sovereignty, nor is it a grant of authority to any department of the government, except that portion referring to dispensary agencies. In the case of *Holley v. State, supra,* it is stated:

"With us the question is not the constitutionality of the local option law so far as the action of the people in determining its adoption is concerned, for that is the mode provided by the Constitution; and, so far as their duties and privileges in the premises are prescribed, there can be no doubt that the Legislature, as we have seen, have limited the popular action within the prescribed constitutional grant of power on the subject. This action only determines 'whether the sale of intoxicating liquors shall be prohibited within the prescribed limits.'"

And the court further adds:

"And doubtless the inducement to ingraft this provision

upon the Constitution was to avoid all those perplexing constitutional questions which had arisen in other states with regard to such laws when submitted for adoption to the people."

Suppose the prohibition article had been incorporated in the Constitution only to apply to that portion of the state formerly comprising the Indian Territory and the Osage Indian Reservation, and such other Indian reservations that existed as such on January 1, 1906. Would the Legislature then have had unrestrained power to regulate the liquor traffic in the remaining portion of said state? Section 59, art. 5 (Bunn's Ed. § 132), of the Constitution, provides that "laws of a general nature shall have a uniform operation throughout the state, and where a general law can be made applicable, no special law shall be enacted." If the contention of the respondent be true that this prohibition provision, which is practically identical with the provisions of section 7, art. 1 (Bunn's Ed. § 9), required in the Enabling Act as to the Indian Territory and other Indian reservations, was a limitation upon the power of the Legislature in dealing with such traffic, then, as to that portion of the state not comprised in the Indian Territory and the other Indian reservations, would the Legislature have been limited in the way of enacting prohibition laws to the purview of such provision, as long as the same was in force? In section 1, art. 5 (Bunn's Ed. § 51), *supra,* the legislative authority of the state is vested in a Legislature, consisting of the Senate and House of Representatives; but the people reserve to themselves the power to propose laws and amendments to the Constitution, and to enact or reject the same at the polls independent of the Legislature, and also reserve power at their own option to approve or reject at the polls any act of the Legislature. Section 7, art. 5 (Bunn's Ed. § 61) of the Constitution, provides that "the reservation of the powers of the initiative and referendum in this article shall not deprive the Legislature of the right to repeal any law, propose or pass any measure, which may be consistent with the Constitution of the state and the Constitution of the United States." If the contention of the respondent be correct that the prohibition

ordinance (Bunn's Ed. § 499, p. 138) is a limitation upon the power of the Legislature to enact any additional legislation relating to the liquor traffic, it would be tantamount to saying that it would be a limitation upon the power of the people to initiate a law relating thereto, and the only way to have any additional legislation dealing with the liquor traffic would be by amendment to the Constitution, either initiated by the people or submitted by the Legislature.

A legislative measure initiated by the people will not take effect and be in force until it has been approved by a majority of all the votes cast at such general election. Section 3, art. 5 (Bunn's Ed. § 53). Also, amendments proposed, either by the Legislature or by the initiative, when submitted at a general election, do not become a part of the Constitution unless a majority of the electors voting at such election shall vote in favor of the same. Section 1, art. 24 (Bunn's Ed. § 446). If the legislative act is initiated by petition, such petition must contain 8 per cent. of the legal voters; and, if the proposed amendment is initiated by petition, 15 per cent. of the legal voters is required. The only difference in adopting a legislative act and a constitutional amendment by the initiative is the number of the petitioners required. Yet if the construction contended for by the respondent is adopted, absurdities would follow. Whenever a proposition contended for under a logical analysis produces such consequences, in cases of doubt or ambiguity, it is not to be presumed that such a construction was ever contemplated by the framers. Cooley's Const. Lim. (7th Ed.) p. 109; *McMullen v. Hodge,* 5 Tex. 35. The power being reserved to the people to propose laws and amendments to the Constitution, and to enact or reject the same at the polls, independent of the Legislature, and also to approve or reject any of its acts, at the same time it being stipulated that the reservation of such power should not deprive the Legislature of the right to repeal any such law, or to propose or pass any measure which otherwise might be consistent with the Constitution of the state and of

the United States, to avoid all those perplexing constitutional questions which have arisen in other states relative to restrictions by implication of legislative power is an additional reason for inducing the ingrafting of the provision contained in section 36, art 5 (Bunn's Ed. § 109), *supra.*

3. Does said act violate the provisions of section 7, art. 2 (Bunn's Ed. § 16), of the Constitution of Oklahoma, or of the fourteenth amendment to the Constitution of the United States, in that no provision is made for any legal notice, constructive or otherwise, of the time and place, or the person or tribunal before whom the hearing shall be had to determine whether or not the property taken under the search warrant shall be forfeited? To invest a court with effectual jurisdiction in any case the thing in controversy, or the parties to such action, must be subjected to the process of the court. Certain cases may proceed *in rem,* notice being taken rather of the thing in controversy than of the party concerned, and the process is to be served upon that which is the object of the action, without special reference or notice to the parties interested. In such proceedings *in rem* a substituted service may be provided by statute in such cases, in the form of a notice published in the public journals, or posted, as may be directed by statute, the mode being chosen with a view to bring it home, if possible, to the knowledge of the parties being affected, and to give them an opportunity to appear and defend, and the power of the Legislature to prescribe such notice and give it effect as process rests upon the necessity of the case, and has long been recognized and acted upon. Such notice, however, is restricted, so as to enable the court to give effect to the proceeding so far as it is one *in rem*; but, whenever the *res* is disposed of, the authority of the court ceases, and such notice cannot be made available for additional purposes. When the Legislature prescribes a kind of notice by which it is reasonably probable that the party proceeded against will be apprised of what is going on against him, and an opportunity is afforded him to defend, the

courts will not exercise the power to pronounce the proceeding illegal. Cooley's Const. Lim. (7th Ed.) pp. 580, 581, 582, 583; *Borden v. State,* 11 Ark. 519, 44 Am. Dec. 217; *Empire State Bank,* 18 N. Y. 215; *Rockwell v. Nearing,* 35 N. Y. 302; *Happy v. Mosher et al.,* 48 N. Y. 317; *Hiller v. Burlington, etc., R. Co.,* 70 N. Y. 237; *Eikenberry v. Edwards,* 67 Iowa, 622, 25 N. W. 832, 56 Am. Rep. 360; *Gilchrist v. Schmidling,* 12 Kan. 272; *Pennoyer v. Neff,* 95 U. S. 743, 24 L. Ed. 565; *Beard et al. v. Beard,* 21 Ind. 321; *Cupp et al. v. Commissioners et al.,* 19 Ohio St. 181; *Fisher v. McGirr,* 1 Gray (Mass.) 1, 61 Am. Dec. 381.

Under section 5, art. 3, of the enforcing act, under certain conditions it is the duty of the judge or magistrate to issue a warrant, directed to any officer of the county, whom the complainant may designate, having power to serve criminal process, commanding him to search the premises described and designated in such complaint and warrant, and to seize all such liquors there found, together with the vessels in which they are contained, and all implements, furniture, and fixtures used or kept for such illegal manufacturing, selling, bartering, giving away, or otherwise furnishing of such liquors, and safely keep the same, and to make return within three days of such warrant, showing all acts and things done thereunder, with a particular statement of all property seized, of the person or persons in whose possession it was found, if any, and if no person be found in the possession of said property, his return should so state. Now, if such a warrant is served upon the owner or party in possession of such liquors, indicating and describing the premises in which same is contained, and authorizing the seizure of all liquors therein found, together with the vessels in which they are contained, and all implements, furniture and fixtures used or kept for such illegal manufacturing, selling, bartering, giving away, or otherwise furnishing of such liquors, can this court say that such notice would not reasonably inform the party in possession, or the interested party if he saw

it posted, that his property had been seized? Section 5675, Wilson's Rev. & Ann. St. Okla. 1903.

Section 6, art. 3. of the enforcing act, provides that:

"Upon the return of such warrant as provided in the next preceding section, the magistrate or judge shall fix a time, not less than ten days nor more than thirty days thereafter, for hearing of said return, when he shall proceed to hear and determine whether or not the property so seized, or any part thereof was used in violation of any of the provisions of this act. At such hearing any party claiming an interest in any such property, may appear and be heard, and if upon such hearing it shall appear that any property so seized was knowingly used, or permitted to be used, in violation of any provision of this act, the same shall be adjudged forfeited by the state, and shall be delivered to the custody of the superintendent, to be disposed of under the provisions of this act. If upon such hearing it shall appear that any property so seized was not kept or used for an unlawful purpose, or if any person shall show that he is the owner of any such furniture, fixtures or other property seized under such warrant, and that the same, or any part thereof, were unlawfully used without his knowledge or consent, the same shall be returned to its lawful owners."

Section 4, par. 557, div. 8, c. 38, vol. 1 (2d. Ed. 1896) Starr & C. Ann. St. Ill., provides:

"If there is satisfactory evidence that any property stolen, embezzled, or obtained by false tokens or pretenses, or that any of the other things for which a search warrant may be issued, by the provisions of this act, are kept, concealed, prepared or used in a particular house or place, a warrant may be issued by two judges or justices of the peace, to authorize the search of such house or place in the nighttime, and to bring the property or things described in the warrant or summons, and the person in whose possession they are found, before either of the judges or justices who issued the warrant, or some other judge or justice of the peace of the county."

Section 7 (sec. 7, par. 560) of the same chapter and division provides:

"When an officer, in the execution of a search warrant, finds stolen or embezzled property, or seizes any of the other things 'for which a search is allowed by this act, all the property and

things so seized shall be safely kept by direction of the judge, justice or court, so long as necessary for the purpose of being produced or used as evidence on any trial. As soon as may be afterwards, all such stolen and embezzled property shall be restored to the owner thereof, and all the other things seized by virtue of such warrants shall be burnt, or otherwise destroyed, under the direction of the judge, justice or court."

In the case of *Glennon v. Britton,* 155 Ill. 232, 40 N. E. 598, the court said:

"Statutes of the character of those in question are enacted upon the theory that the proceedings shall be against the thing or *in rem.* And the state and federal courts abound in decided cases in which laws of this kind have been held constitutional and valid, where no service was had or contemplated, other than that upon or against the offending thing, and the person in whose possession it is found. In respect to the major part, if, indeed not all, of the property of the character described in the act, except that denominated as 'stolen' or 'embezzled,' it would be practically impossible to find the owners, if any. When counterfeit or spurious coin, forged bank notes, and instruments or tools for making the same are confiscated by public officers, the owners are often unknown, if not in remote and distant parts. Owners of obscene and vulgar books, pamphlets, or pictures, who circulate or dispose of their goods secretly and in violation of law, are not readily found and identified with the goods, nor do either they or spurious coin makers hasten to claim rights of property in the things seized. Gambling tables, implements, and devices are not usual and customary subjects of property, and, if such articles chance to be seized by vigilant officers of the law, the owners are more difficult to locate and apprehend. Experience has shown that while the property, materials, and paraphernalia may be seized, and the immoral resort or rendezvous thus, perhaps, broken up, the proprietors, or those who engage in the immoral and nefarious business, are on the alert, and not infrequently evade, if they do not altogether escape, the penalties of the law. The object of the proceedings to be instituted under the statute is that the unlawful and immoral practice be stopped, by destroying implements, apparatus, materials, etc., with which it is carried on. The theory is, with respect to such property, that no one is longer the owner of it. The moment that it is used and applied in the unlawful

business it becomes liable to forfeiture; and, though the claimant may appear and claim, he has no greater rights in property so used than has any other person. That the business or traffic designated, in which the offensive property is used, is immoral and unlawful, and therefore a public nuisance, cannot be questioned. And for the promotion of the general welfare the state, under its police powers, has the undoubted right to adopt the most expeditious, inexpensive, and effective mode of abolishing and abating the same. That under the various acts of Congress goods and things are seized, condemned, and destroyed without service of process on the owner other than a seizure of the goods and arrest of person in whose possession they are found, and such statutes and proceedings under them regarded constitutional and valid, has been determined in many adjudicated cases in the federal courts. *Boston Beer Co. v. Massachusetts,* 97 U. S. 25, 24 L. Ed. 989; *Bartemeyer v. Iowa,* 18 Wall. 129, 21 L. Ed. 929; *U. S. v. Distillery No. 28,* 6 Bliss. 484, Fed. Cas. No. 14,966; *Boyd v. U. S.,* 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746; *Stockwell v. U. S.,* 3 Cliff. 284, Fed. Cas. No. 13,466; *Locke v. U. S.,* 7 Cranch, 339, 3 L. Ed. 364; *The Luminary,* 8 Wheat. 407, 5 L. Ed. 647; *Henderson's Distilled Spirits,* 14 Wall. 44, 20 L. Ed. 815, and cases cited."

The exercise of such power should be properly guarded, and every proper means adopted in order to prevent abuses and infringements of the rights of the citizens under the Constitution. In that case the Legislature required that not only the property, but also the person in whose possession it was found, should be brought before the court in order to acquaint the parties who may be interested with the proceedings, and that they be given an opportunity to be heard concerning the disposition that should ultimately be made of the property. The Legislature of this state required that a copy of such warrant should be served upon the person or persons found in the possession of any such liquors, furniture, or fixtures so seized, and if any person be not found in the possession thereof, a copy of said warrant shall be posted upon the door of the building or room wherein the same are found. The magistrate or judge in issuing the warrant is required to describe and designate the place or premises to be searched, directing that

such liquors, together with the vessels in which they are contained, and all implements, furniture, and fixtures used or kept for such illegal manufacturing, selling, bartering, giving away, or otherwise furnishing of such liquors shall be seized and safely kept, and to make return within three days of such warrant, showing all acts and things done thereunder, with a particular statement of all property seized, of the person or persons in whose possession the same was found, if any, and if no person was found in the possession of said property the return should so state   Section 6 (paragraph 559) div. 8, c. 38, Illinois Statutes, *supra,* provides that such officer shall make a return, particularly specifying the property taken, and the place where and the person from whom same was taken.   The warrant shows from what court or by what magistrate or judge it was issued.   The provision is made that, after the return of said warrant, the magistrate or judge shall fix a time, not less than 10 days nor more than 30 days thereafter, for hearing said return, when he shall proceed to hear and determine whether or not the property so seized, or any part thereof, was used in violation of any provision of said act.   This limitation upon the power of such judge or justice as to the time in which he may not act and the prescribed time in which he is required to act was evidently done with a view of allowing time in which the owner of such property might appear and claim same; and the requirements that action should be taken within 30 days would prevent his property, in event it was not entitled to be destroyed or confiscated under the law, from being held and kept from him an indefinite length of time.   The Legislature has seen fit to require this form of notice, which they  in  their  discretion must have deemed sufficient for the summary purposes and objects of the act.   It is the duty of the court to hold statutes constitutional and valid if it can consistently and reasonably be done; and, in view of this clearly established doctrine, we are of the opinion that such provision is made by the statute for notice of the proceedings and a hearing of the matters involved, and in the light

of the authorities, we do not feel that we would be justified in holding that the same is in conflict with section 7, art. 3 (Bunn's Ed. § 16), of the Constitution.

4. Does section 8, art. 3, of the enforcing act, in providing that "no such warrant shall issue but upon probable cause, supported by oath or affirmation, describing as particularly as may be the place to be searched, or the person or thing to be seized," conform to the requirements of section 30, art. 2 (Bunn's Ed. § 39), of the Constitution, which provides that "no search warrant shall issue but upon probable cause, supported by oath or affirmation, describing as particularly as may be the place to be searched, and the person or thing to be seized?" It must be assumed that the Legislature could not have intended to have produced an absurd or unreasonable result, or to express itself in terms which would defeat the very objects of the enactment; and, when such effect would follow a literal construction of a statute, the conjunctive particle may be read as disjunctive, or *vice versa*, on the theory that the word to be corrected was inserted by inadvertence or clerical error. While they are not treated as interchangeable, and should be followed when their accurate reading does not render their sense dubious, their strict meaning is more readily departed from than that of other words, and one may be read in place of the other to carry out the evident legislative intent. Sutherland, Statutory Constitution (Lewis, 2d Ed.) vol. 2, § 397; Black on Interpretation of Laws, p. 153; 6 Words & Phrases, 5003 *et seq.; Bryan v. Menefee,* 21 Okla. 1, 95 Pac. 472.

In the case of *Board of Supervisors of Warren County v. Booth,* 81 Miss. 267, 32 South. 1001, Mr. Chief Justice Whitefield, in delivering the opinion of the court, said:

"The entire difficulty grows out of the use of the word 'or' instead of 'and.' But it is well settled that, whenever it is clear that either of these words has been mistakenly used for the other, the one intended will be substituted for the one mistakenly used, so as to carry out the legislative intent. * * * It is not that 'or' is read 'and,' for, as correctly pointed out by Jessel, master of the rolls, in

*Morgan v. Thomas,* 51 Law J. Q. B. 557, 'or' never means, and is never read, 'and,' but 'or' used by mistake for 'and' is substituted by 'and,' the legislative intent imperatively so requiring."

In the case of *U. S. v. Fisk,* 70 U. S. 445, 18 L. Ed. 243, Mr. Justice Grier, in delivering the opinion of the court, said:

"In the construction of statutes it is the duty of the court to ascertain the clear intention of the Legislature. In order to do this courts are often compelled to construe 'or' as meaning 'and,' and again 'and' as meaning 'or.' "

It was clearly the intention of the Legislature to follow the language of the Constitution relative to search and seizure *ipsis verbis,* and that the word "or" was inserted, either by the framer of the act or by the copyist, by inadvertence or clerical error; and, in order to carry out the evident legislative intent, in our construction we will substitute the conjunctive particle "and," in the place of the disjunctive particle "or."

5. Is section 6, art. 3, of the enforcing act, or any portion thereof, in conflict with the Constitution, where it is provided that "the right of trial by jury shall be and remain inviolate, * * *" and that "in all issues of fact joined in any court all parties may waive the right to have the same determined by jury, in which case the finding of the judge upon the facts shall have the force and effect of a verdict by jury?" Said section 6 provides that:

"Upon the return of such warrant as provided in the next preceding section, the magistrate or judge shall fix a time, not less than ten days nor more than thirty days thereafter, for hearing of said return, when he shall proceed to hear and determine whether or not the property so seized, or any part thereof was used in violation of any of the provisions of this act. At such hearing, any party claiming an interest in any such property, may appear and be heard, and if upon such hearing it shall appear that any property so seized was knowingly used, or permitted to be used, in violation of any provision of this act, the same shall be adjudged forfeited by the state, and shall be delivered to the custody of the superintendent, to be disposed of under the provisions of this act. If upon such hearing it shall appear that any property so seized

was not kept or used for an unlawful purpose, or if any person shall show that he is the owner of any furniture, fixtures or other property seized under such warrant, and that the same or any part thereof, were unlawfully used without his knowledge or consent, the same shall be returned to its lawful owners."

Nowhere in said act is any procedure prescribed for such hearing.

In the case of *Green v. Lord Penzance et al.,* 6 Law Rep. App. Cas. 1880-81, 671 the Lord Chancellor said:

"If we have not in the act of 1874 special directions as to the mode of enforcing obedience to such orders as may be lawfully issued under it, still if those orders are orders made in causes or a cause cognizable according to the laws of this realm in an ecclesiastical court, and if the court which made those orders is an ecclesiastical court, then I think we have a very sufficient explanation of the absence in the act of 1874 of particular provisions and directions as to the way in which the orders of the court or the judge under that act are to be enforced; because we have here a general act of Parliament which, as to all cases of disobedience to all orders of any ecclesiastical court in causes which, according to the laws of the realm, are cognizable in such a court, tells you what the mode of enforcing those orders is to be. It was therefore purely and entirely unnecessary to repeat particular provisions by reference or otherwise on that subject in this act of 1874."

The presumption is that the procedure before magistrates or justices of the peace and county and district courts was contemplated (sections 5016, 5017, 5113, 5151, Wilson's Rev. & Ann. St. 1903) ; that if any other than the usual procedure was intended, the Legislature would have so expressly declared, and it does not clearly appear that it was the intention of the Legislature that the regularly prescribed procedure of trial by jury before justices of the peace, and county and district courts was to be denied to such claimants, or dispensed with in such cases. *Huston v. Scott,* 20 Okla. 142, 94 Pac. 512; *Graham v. Van Wyck,* 14 Barb. (N. Y.) 531; *State v. Rotwitt,* 17 Mont. 41, 41 Pac. 1004; Sutherland, Stat. Const. (2d Ed., Lewis) p. 931.

The intention of the law-makers should be diligently sought

for under the settled rules of construction; but if, after determining what such intention was, it appears that the act is clearly in conflict with the organic law, the court should not hesitate to strike it down.   It is as much the duty of the court to declare invalid an unconstitutional act as it is to uphold one that is in accord with the state's charter.   But before the conclusion that the intention of the act was to accomplish a purpose contravening the organic law of the state is reached, it is well to remember that the members of the Legislature have taken an oath to support the Constitution of the state, and are presumed to have so intended when they enact laws; and, if there is any reasonable doubt as to the meaning of any act, every intendment is in favor of that construction which will render it valid.   Courts have nothing to do with policies.   The individual or personal views of its members upon the questions that brought about the enactment cannot be permitted to affect the construction and conclusion as to the validity of an act, or its meaning.   If a law does not meet with popular accord, that is no reason why the arm of the judiciary should be leveled against it.   Under our institutions the power rests solely with the people, or the representatives of such sovereignty, to repeal or amend laws.

The writ will be awarded, to be issued only upon the further application of relator's counsel, in the event respondent fails to act, upon advice of our conclusions.

All the Justices concur.