Dear Representatives White,
¶ 0 The Attorney General has received your request for an official opinion asking, in effect:
Is a school district required to use the negotiation processspecified in 70 O.S. 509.1 (1988) et seq., to determine thedistribution of the state aid increase provided by theLegislature in Okl. Sess. L. 1988, c.298, 51, if either theclassroom teachers or support personnel staff requests suchnegotiations and the other group of employees is not using thenegotiations process?
¶ 1 Your question arises from the apparent ambiguity of a sentence in an appropriation bill which provides that when "the classroom teacher and support personnel staff and the board of education of a school district are using the negotiation process as set out by law, the distribution of the increase [in state aid] may become a negotiable item." (Emphasis added).
¶ 2 A meaningful and correct answer to your question requires that we compare and harmonize two enactments of the Legislature: one, the School Employees Negotiations Act (SENA), 70 O.S.509.1 (1988) et seq., provides generally for collective bargaining for various types of school employees over wages, hours and other terms and conditions of employment; the other, Okl. Sess. L. 1988, c.298, 51 (this provision, not codified, is appended as a "note" to 70 O.S. 18-112.2 (1988)), establishes guidelines for ensuring by several alternative means that a significant proportion of state financial aid to local school districts is further distributed to certain of those employees.
¶ 3 Section 51, in its entirety, reads as follows:
 Each district that receives an amount of State Aid including any supplement funding pursuant to 70 O.S. 18-112.2 of the Oklahoma Statutes in the 1988-89 school year that is greater than the amount of State Aid including any supplement funding pursuant to 70 O.S. 18-112.2 of the Oklahoma Statutes received for the 1987-88 school year shall expend seventy-five percent (75%) of the difference in State Aid by providing salary and fringe benefit increases for each full-time and each part-time classroom teacher and support personnel staff. If the classroom teacher and support personnel staff and the board of education of a school district are using the negotiation process as set out by law, the distribution of the increase may become a negotiable item. Provided, however, that if a majority of the classroom teacher and support personnel staff of a school district has by election approved an agreement with the board of education of the district in lieu of statutory negotiations, the board of education and school administration may work with the duly designated representatives of its classroom teacher and support personnel staff to adopt a plan for the distribution of the increase. Provided, if neither of the above two (2) procedures for determining the distribution of the increase are used, the increase shall be distributed so that each classroom teacher and support personnel staff receives an equal percentage of increase. Provided, if seventy-five percent of said difference in State Aid exceeds the amount required to provide an equal percentage increase of five percent or exceeds the amount required to meet the cost of agreements negotiated or planned as described herein, said excess shall nevertheless be expended for classroom teacher and support personnel staff salary and fringe benefits, which may, however, include expenses of employing personnel previously reduced-in-force or new classroom teachers or support personnel.
(Emphasis added).
¶ 4 This enactment establishes three procedures by which a local school district may lawfully distribute any increases in state aid over the previous year, to its classroom teachers and support personnel staff. In summary form those procedures are:
 Method 1: If the district engages in collective bargaining with its employee organization(s) pursuant to the SENA, then the state aid may be distributed by whatever method is negotiated with the employee organization; or
 Method 2: If the district engages in an informal "meet and confer" procedure in lieu of statutory collective bargaining, then the state aid may be distributed by a method determined by the district following discussion with representatives of its classroom teacher and support personnel staffs; or
 Method 3: If the district engages in neither formal (Method 1) nor informal (Method 2) collective bargaining, then the district must ensure that each of the two classes of employees receives an equal percentage of increase in salary and/or fringe benefits.
¶ 5 Thus, Methods 1 and 2 describe the only circumstances in which a local school district may allocate increased state aid on anything other than a pro rata basis to each classroom teacher and support personnel staff member. The question you pose is, in effect, whether both groups of employees (classroom teachers and support personnel) need to be involved in either formal or informal bargaining for either group to avail itself of Method 1 or 2. The difficulty arises from the Legislature's use of the word "and" between the terms "classroom teachers" and "support personnel staff" in setting out Methods 1 and 2 in 51. Put differently, is the question whether "and" is to be read in the conjunctive or in the disjunctive.
¶ 6 The courts have long recognized the ambiguities that may arise from the use of "and" when "or" is meant, or vice versa. The appropriate rule of construction was outlined by the Oklahoma Supreme Court in Oklahoma National Life Insurance Co. v.Norton, 145 P. 1138, 1139 (Okla. 1915):
 "It must be assumed that the Legislature could not have intended to have produced an absurd or unreasonable result, or to express itself in terms which would defeat the very objects of the enactment; and, when such effect would follow a literal construction of the statute, the conjunctive Article may be read as disjunctive, or vice versa, on the theory that the word to be corrected was inserted by inadvertence or clerical error. While they are not treated as interchangeable, and should be followed when their accurate reading does not render their sense dubious, their strict meaning is more readily departed from than that of other words, and one may be read in place of the other to carry out the evident legislative intent. Sutherland, Statutory Construction (Lewis, 2d Ed.) vol. 2, 397; Black on Interpretation of Laws, p. 153; 6 Words Phrases, 5003 et seq.; Bryan v. Menefee, 21 Okl. 1, 95 Pac. 472." [quoted from State ex rel. Caldwell v. Hooker, 98 P. 964 (Okla. 1908)].
¶ 7 In Norton, the Court found no ambiguity which would permit application of the Hooker rule. Contra, see, Baker v.State, 254 P. 512 (Okla.Crim.App. 1927); United States v.Mullendore, 30 F.Supp.13 (N.D. Okla. 1939) (relying on theHooker case cited in Norton).
¶ 8 The ambiguity in 51, necessitating the application of the Hooker rule, is created by the language, in Method 1, referring to "the negotiation process set out by law." A reference to the SENA 70 O.S. 509.6 requires a board of education to negotiate in good faith with a duly designated employee organization on wages, hours, fringe benefits and other terms and conditions of employment. The right to bargain on wages is not made contingent upon the exercise or nonexercise of rights by employees in other bargaining units.
¶ 9 Title 70 O.S. 509.2(A)(1), 70 O.S. 509.2(2), and 70 O.S. 509.2(3) (1988) define the appropriate bargaining units from which fully designated bargaining representatives may emerge:
 1. Employees who are employed and certified as principals and assistant principals and who have responsibilities for the supervision of classroom teachers shall constitute an appropriate unit;
 2. All other employees who are required by the position in which employed to be licensed or certified as teachers or entry year teachers as those terms are defined in 70 O.S. 1-116 of this title and who do not hold supervisory authority with respect to other teachers in the district shall constitute an appropriate unit;
 3. All other employees who do not have formal responsibility for making recommendations concerning the employment status of other employees of the district shall constitute an appropriate unit.
 Provided, if employees categorized according to paragraph 2 and 3 of this subsection are bargaining as a single unit at the time this act takes effect or are at any time employed in a district having fewer than seventy-five employees in the two categories taken together, said employees may, for such time as a majority of the employees in each category indicate by secret ballot vote they share a single community of interest, constitute a single appropriate unit. Further provided, any final judgment of the Oklahoma Supreme Court denying such community of interest in any school district shall have the effect of rendering inappropriate all units, in whatever school districts they exist, which include employees of both categories.
¶ 10 We need not be concerned with the supervisory employees described in subsection (1), who are beyond the scope of your question. Subsections (2) and (3) provide for separate bargaining units for classroom teachers and non-supervisory support personnel. The provision, however, permits merged bargaining units, encompassing both groups of employees, in local school districts with fewer than seventy-five employees, if a majority of each group so desires. Therefore, the phrase "classroom teachers and support personnel" used to describe Method 1 may have a very specialized meaning in one context (merged bargaining units in "small" districts) and a more ambiguous meaning in the context of separate bargaining units envisioned generally in 70O.S. 509.2(A).
¶ 11 If "and" is used in the conjunctive, 51 would permit collective bargaining over excess state aid in two scenarios only: (1) both the classroom teachers and support personnel must be separately recognized for collective bargaining: that is, the disinclination of either group to organize for bargaining would negate rights otherwise inuring to the other. Alternatively, (2) a properly merged bargaining unit of classroom teachers and support personnel in local school districts with fewer than seventy-five (75) total employees.
¶ 12 If, on the other hand, "and" is used in the disjunctive, the rights of all employees to engage in collective bargaining are vindicated without the need to rely on the desires or conduct of outside parties. This reading would best harmonize with the framework for school employee collective bargaining reflected in SENA.
¶ 13 This approach, reading "and" to mean "or," has the added virtue of reflecting the well-established rule of construction which requires two statutes on the same subject matter to be read in a manner which harmonizes them to the maximum degree possible and gives full effect to both. See, e.g., AMF Tubescope Co. v.Hatchel, 547 P.2d 374 (Okla. 1976). Finally, this construction best avoids the dilemma of reading 51 in a way which appears to treat people differently based upon their ability to participate in merged collective bargaining units pursuant to the provisions to 70 O.S. 509.2(A). The Oklahoma Supreme Court has gone to great pains to avoid constructions of 70 O.S. 509.2 that would make employee rights a function of the size of a school district in violation of Article V, Section 46 of the Oklahoma Constitution. See, Maule v. Independent School District No. 9 ofTulsa County, 714 P.2d 198 (Okla. 1985) (construing 70 O.S.509.2 to extend the right to secret ballot elections to employees of all school districts notwithstanding statutory language which arguably reserved that right to employees of districts with 35,000 pupils or more). For the foregoing reasons, we conclude that the exercise of collective bargaining rights by one group of employees under 51 does not hinge on the exercise of those same rights by other, independent employee groups.
¶ 14 It is, therefore, the official opinion of the AttorneyGeneral that a local school district is required to use thenegotiation process specified in 70 O.S. 509.1 (1988) et seq.to determine the distributions of the state aid increase providedin Okl. Sess. L. 1988, c.298, 51, if either the classroom teacheror support personnel staff requests such negotiations whether ornot the other group of employees is using the negotiationsprocess.
ROBERT H. HENRY ATTORNEY GENERAL OF OKLAHOMA?
NED BASTOW ASSISTANT ATTORNEY GENERAL