## HAMILTON *v.* SECRETARY OF STATE.

1. CONSTITUTIONAL LAW—INITIATIVE—PETITION FOR SUBMISSION OF AMENDMENT.

    Section 2, art. 17, of the Constitution, relating to petitions for the submission of proposed constitutional amendments to vote, contains procedural rules, regulations, and limitations, and maps the course and marks the way for the accomplishment of an end, and will brook no elimination or restriction of its requirement; and if its provisions are complied with and its procedure followed its mandate must be obeyed.

2. SAME — BASIS FOR NUMBER OF SIGNATURES—MAY NOT BEGIN UNDER ONE BASIS AND END UNDER ANOTHER.

    Since under section 2, art. 17, of the Constitution, the vote for governor every two years fixes the basis for determining the number of legal voters necessary to sign an initiatory petition and start designated official action, a petition must start out for signatures under a definite basis for determining the necessary number of signatures, and succeed or fail within the period such basis governs, and, therefore, it may not begin in one period under one basis and finish in another period under another basis.

On effect of noncompliance with prescribed method of amending Constitution, see note 10 L. R. A. (N. S.) 149.

3. SAME—IF PETITION HAS PROPER PERCENTAGE OF VOTERS IT BE-
COMES EFFECTIVE WHEN FILED.

Since the Constitution plainly intends an expression of
an existing sense of a designated percentage of the legal
voters, such sense may be expressed after any biennial
election for governor, and if in percentage of legal voters
signing the petition it meets the basis under which it
was circulated, it becomes effective upon filing the same
with the secretary of State at least four months before
the basis is changed by a subsequent vote for governor;
the petition may also be filed four months before a general
election intervening biennial elections for governor.

4. SAME—BASIS FOR DETERMINING PERCENTAGE OF VOTERS NECES-
SARY IS PROSPECTIVE.

The provision of section 2, art 17, of the Constitution,
providing that "the total number of votes cast for governor
* * * shall be the basis upon which the number of
legal voters necessary to sign such a petition shall be com-
puted," is prospective in operation and not retroactive.

5. MANDAMUS—CONSTITUTIONAL AMENDMENT.

Mandamus will not lie to compel the secretary of State
to submit to vote a proposed constitutional amendment
where it appears that the provisions of the Constitution
relating to the signatures to the petition have not been
complied with, and it is immaterial whether he gave a
wrong or a right reason for his refusal to submit it,
since the Constitution, and not his opinion, governs.

Mandamus by James Hamilton to compel Charles J.
DeLand, secretary of State, to submit a proposed
amendment of the State Constitution. Submitted Jan-
uary 23, 1923. (Calendar No. 30,686.) Writ denied
February 2, 1923.

*Moore & Moore,* for plaintiff.

*Andrew B. Dougherty,* Attorney General, and *Clare
Retan,* Assistant Attorney General, for defendant.

PER CURIAM. In this case plaintiff asks for a writ
of mandamus, directing the secretary of State to sub-
mit to the legal voters of the State, at the coming April

election, an amendment to article 11 of the Constitution, by adding thereto two new sections to be known as sections 16 and 17, to read as follows:

"SECTION 16.    From and after August 1st, 1924, all children residing in the State of Michigan, between the ages of seven years and sixteen years, shall attend a public school until they have graduated from the eighth grade.

"SEC. 17.    The legislature shall enact all necessary legislation to render said section 16 effective."

Plaintiff filed with the secretary of State, on November 27, 1922, a petition asking that such amendment be submitted to the legal voters at the April election, 1923.

Section 2, article 17, of the Constitution provides:

"Amendments may also be proposed to this Constitution by petition of the qualified voters of this State.    Every such petition shall include the full text of the amendment so proposed, and be signed by not less than ten per cent. of the legal voters of the State. Initiative petitions proposing an amendment to this Constitution shall be filed with the secretary of State at least four months before the election at which such proposed amendment is to be voted upon.    Upon receipt of such petition by the secretary of State he shall canvass the same to ascertain if such petition has been signed by the requisite number of qualified electors, and if the same has been so signed, the proposed amendment shall be submitted to the electors at the next regular election at which any State officer is to be elected.    *    *    *    The total number of votes cast for governor at the regular election last preceding the filing of any petition proposing an amendment to the Constitution, shall be the basis upon which the number of legal voters necessary to sign such a petition shall be computed.    *    *    *    The petition shall consist of sheets in such form and having printed or written at the top thereof such heading as shall be designated or prescribed by the secretary of State. Such petition shall be signed by qualified voters in person only with the residence address of such persons and the date of signing the same."    *    *    *

The secretary of State rejected the petition and refused to submit the proposed amendment, holding that, because 59,648 of the signatures on the petition were procured previous to July 7, 1922, more than four months prior to the last general State election in November, 1922, such signatures could not be considered, and the signatures thereon, procured since such November election, were insufficient in number, amounting to only 8,519.

In support of the position taken by the secretary of State the attorney general contends that signatures to an initiatory petition must be attached within a reasonable period before its filing and inasmuch as signatures on the petition filed run back as far as 20 months, the petition was not filed within a reasonable time. In the brief the attorney general appears to concede that the constitutional provision sets no time limit and asks us to hold that the provision contemplates action within a reasonable time and to determine such time. Plaintiff insists that the Constitution places no time limit on when the petition shall be signed. We cannot accept either view. The Constitution speaks on the subject, as we shall point out.

The constitutional provision contains procedural rules, regulations and limitations; it maps the course and marks the way for the accomplishment of an end; it summons no legislative aid and will brook no elimination or restriction of its requirements; it grants rights on conditions expressed, and if its provisions are complied with and its procedure followed its mandate must be obeyed. Its provisions are prospective in operation and self-executing. The vote for governor every two years fixes the basis for determining the number of legal voters necessary *to sign* an initiatory petition and start designated official action.

This primary essential to any step at all fixes dis-

tinct periods within which initiatory action may be instituted. A petition must start out for signatures under a definite basis for determining the necessary number of signatures and succeed or fail within the period such basis governs.

The petition in question started out in February, 1921, under the then requirement that to be effective it must have 105,853 signatures. An attempt was made to meet the requirement and failed. This petition lost all legal significance when the vote for governor at the November election in 1922 fixed a new basis and a less number of legal voters necessary to sign. The petition died with the requirement it sought but could not meet and was not raised from the dead by the advent of a new basis designating the number necessary to sign.

Suppose a petition is circulated on the basis of the vote for governor and fails to receive the required number of signatures, and it is held over a succeeding biennial election for governor where the vote is less and "the basis upon which the number of legal voters necessary to sign" is smaller, will that make good under the new basis what was wholly ineffective under the old basis? Certainly not. This, if permitted, would take all sense out of the term "to sign," and would treat the requirement that the date of signing be given as without any purpose.

The supposed case is this case. At the biennial election in 1920, the vote for governor was 1,058,539, and this, as the basis, fixed the necessary number of signatures to initiate an amendment to the constitution at 105,853, while at the election in November, 1922, the vote for governor was 583,670, which would constitute 58,367 signatures sufficient. Plaintiff did not have enough signatures to file the petition four months before the November election in 1922, but held the same until a new basis for legal voters, neces-

221—Mich.—35.

sary to sign, was fixed at that election and then filed the petition, with the addition of 8,519 signatures. Plaintiff secured approval of the heading of the petition in February, 1921, and up to July 7, 1922 (that date being four months immediately preceding the November election) had secured but 59,648 of the necessary 105,853 signatures, and between July 7th and November 27, 1922, when the petition was filed secured 8,519 additional signatures. It is clear, from a reading of the constitutional provision, that a petition must be circulated after one election for governor and filed at least four months before another election for governor. Of course, the petition may be filed four months before a general election intervening biennial elections for governor, but it cannot start out under one basis and end up under another.

Confessedly the petition never contained sufficient signatures to meet the basis under which it was circulated. The identity of the petition was inseparably linked with the basis it sought to comply with, and as an initiatory petition it could not and did not survive the passing of such basis and then identify itself with a new basis wholly prospective in operation. It would be anomalous to say that a failure to comply with a former basis may constitute full compliance with a later basis. The Constitution plainly intends an expression of an existing sense of a designated percentage of the legal voters. Such sense may be expressed after any biennial election for governor, and if in percentage of legal voters signing the petition it meets the basis under which it was circulated, it becomes effective upon filing the same with the secretary of State at least four months before the basis is changed by a subsequent vote for governor.

We can add nothing to the constitutional provision and take nothing away from it. We must give effect to its every provision. The provision that

"The total number of votes cast for governor at the regular election last preceding the filing of any petition proposing an amendment to the Constitution, shall be the basis upon which the number of legal voters necessary *to sign* such a petition shall be computed,"

is prospective in operation and does not admit of what plaintiff attempts. If the secretary of State was right in refusing to accept and act on the petition it is immaterial whether he gave a good or a poor reason for such refusal. The Constitution governs and not the opinion of the secretary of State. If the secretary of State gave a poor reason for his refusal, with a good reason right at his hand, it does not operate to the advantage of plaintiff by way of limiting the true issue here. If the secretary gave a wrong reason for a right conclusion he was only wrong in his reason. The question here is whether plaintiff has complied with the constitutional provisions. If he has, the writ asked should be granted; if he has not, then he is not entitled to the assistance of the command of this court.

The secretary of State was right in refusing to submit the proposed amendment, and the writ prayed for is denied. The matter presenting a public question, no costs will be awarded.