HAMILTON *v.* SECRETARY OF STATE.

1. CONSTITUTIONAL LAW—INITIATIVE—CONSTITUTIONALITY OF PRO-
   POSED AMENDMENT WILL NOT BE DETERMINED ON MANDAMUS.
   In mandamus proceedings to compel the secretary of
   State to submit to the electorate a proposed amendment
   to the State Constitution, the court will not determine
   whether or not said proposed legislation violates the
   Federal Constitution.

2. SAME—LEGISLATION ADDING BURDENS TO CONSTITUTIONAL PRO-
   CEDURE VOID.
   In so far as Act No. 204, Pub. Acts 1923, amends or is
   in conflict with the constitutional procedure for amending
   the Constitution (Art. 17, § 2), and in so far as it adds
   additional burdens to the constitutional procedure it is
   void and must give way to the procedure prescribed by
   the Constitution.
   CLARK, C. J., and FELLOWS and WIEST, JJ., dissenting.

Mandamus by James Hamilton to compel Charles J.
DeLand, secretary of State, to submit a proposed
amendment to the State Constitution. Submitted
January 22, 1924. (Calendar No. 31,197.) Writ
granted May 8, 1924.

*Moore & Moore,* for plaintiff.

*Andrew B. Dougherty,* Attorney General, and *Clare
Retan,* Deputy Attorney General, for defendant.

FELLOWS, J. *(dissenting).* We have before us
again an application for mandamus to compel the
secretary of State to submit to the electorate the so-
called "parochial school" amendment to the State Con-
stitution initiated under the provisions of section 2 of
article 17 of the Constitution. See *Hamilton* v.
*Secretary of State,* 204 Mich. 439; *Hamilton* v. *Secre-*

*tary of State,* 206 Mich. 371; *Hamilton* v. *Secretary of State,* 212 Mich. 31; *Hamilton* v. *Secretary of State,* 221 Mich. 541.    When the question was before us in *Hamilton* v. *Secretary of State,* 212 Mich. 31, I gave my reason for voting against the issuance of the writ.    I then entertained no doubt, and I now entertain no doubt, that the proposed amendment conflicts with the Fourteenth Amendment to the Federal Constitution.    I fully appreciate that it is generally expected that members of this court will acquiesce in the results announced by a temporary majority of this tribunal.    This must be so in the every-day work of this court.    But occasions will arise when convictions are so fixed on constitutional questions, on fundamentals, that one ought not to yield to this doctrine of comity.    The instant case presents in my judgment such an occasion.    I am strengthened in the view that I should not yield on this fundamental question by the fact that the Supreme Court of the United States, the final interpreter of the Federal Constitution, has since the writing of that opinion sustained the views therein expressed.

In the recent case of *Meyer* v. *State of Nebraska,* 262 U. S. 390 (43 Sup. Ct. 625), the court had before it a statute of the State of Nebraska which prohibited the teaching of any foreign language in a parochial school to students who had not passed the eighth grade.    Plaintiff in error, a teacher in a Lutheran parochial school, had taught the German language to a student who had not passed that grade.    He was convicted, and the conviction was affirmed and the statute held valid in *Meyer* v. *State,* 107 Neb. 657 (187 N. W. 100).    He reviewed the decision of the State court in the Supreme Court of the United States and then insisted that his right to teach foreign language in a private school was a liberty secured to him under the Fourteenth Amendment to the Federal Constitution.    The statute was held invalid and the decision

of the State court reversed.    Mr. Justice McReynolds, who wrote for the court, said:

"Plaintiff in error taught this language in school as part of his occupation.    His right thus to teach and the right of parents to engage him so to instruct their children, we think, are within the liberty of the Amendment.   *   *   *   Evidently the legislature has attempted materially to interfere with the calling of modern language teachers, with the opportunities of pupils to acquire knowledge, and with the power of parents to control the education of their own."

At the same time that court disposed of similar statutes of the States of Iowa and Ohio (*Bartels* v. *State of Iowa, Bohning* v. *State of Ohio, Pohl* v. *State of Ohio*, 262 U. S. 404 [43 Sup. Ct. 628]).    That the right to teach in private schools is a liberty secured by this amendment and that that was the sole question before the court is emphasized by the opinion of Mr. Justice Holmes in his dissent.    He said:

"The only question is whether the means adopted deprive teachers of the liberty secured to them by the 14th Amendment."

This interpretation of the Federal Constitution is binding on this court and confirms me in the opinion above referred to.    That *Meyer* v. *State of Nebraska, supra,* is also the view of the court, three judges sitting, in the recent case of the *Society of the Sisters of the Holy Names of Jesus and Mary* v. *Pierce,* 296 Fed. 928 (decided March 31, 1924), is shown by a typewritten copy of the opinion before us, in which case the validity of a similar provision enacted in the State of Oregon was before the court.

I desire to call attention to three cases dealing with the right of defendant to raise the constitutional question in proceeding for mandamus.    The recent case of *State, ex rel. Davies,* v. *White,* 36 Nev. 334 (136 Pac. 110, 50 L. R. A. [N. S.] 195), was an application to compel the submission of an initiated

ordinance to the electorate. Defendants based their refusal on the ground that the ordinance would be invalid if enacted. Disposing of the objection that such defense could not be made, it was said by the court:

"The proposition that a writ of mandate will not issue to compel respondents to submit to the electors of the city a proposed ordinance that would be void, even if approved by a majority of the electors, is too clear for discussion or the citation of authorities."

In *State, ex rel. Wiles,* v. *Williams,* 232 Mo. 56 (133 S. W. 1, 34 L. R. A. [N. S.] 1060), it was held that the constitutionality of a statute might be raised by an officer in mandamus proceedings where such officer was acting on the advice of the attorney general, and in *State, ex rel. University of Utah,* v. *Candland,* 36 Utah, 406 (104 Pac. 285, 24 L. R. A. [N. S.] 1260, 140 Am. St. Rep. 834), that court while recognizing that a subordinate ministerial officer could not interpose such defense in a mandamus proceeding, a superior officer directly responsible to the people for the conduct of his office, in that case the members of the board of land commissioners, could do so. Without going further into this particular question, I think the writ should be denied for the reasons stated in my former opinion.

But there are other questions presented which should be decided. This necessitates a further statement. On August 29, 1923, plaintiff deposited with defendant a petition in form theretofore approved containing 56,282 signatures which were canvassed and those bearing 54,362 signatures were found to conform to the constitutional requirement. The number of signatures necessary to authorize the submission of the amendment was 58,367. On September 7th and October 31st other petitions aggregating upwards of 10,000 signatures in the same form were filed. In the meantime Act No. 204, Pub. Acts 1923, had taken effect. Plaintiff is a member of and acting for a

committee coming within the purview of that act. Neither he nor the committee complied with its provisions and the petitions tendered did not comply with section 3 thereof. Acting upon the advice of the attorney general defendant declined to canvass these petitions tendered after the act took effect.

It is here insisted by plaintiff's counsel that Act No. 204, Pub. Acts 1923, is void in its entirety because section 2 of article 17 of the Constitution (the provision for the initiative) is self-executing and that any legislation on the subject is a nullity. It is further insisted that the act is invalid because in conflict with section 21 of article 5 of the Constitution in that section 3 thereof is not within the title, and that the act or at least this section is void. These questions will be considered in the order stated.

We have no difficulty in agreeing with plaintiff's counsel that the provision of the Constitution providing for its amendment through the initiative is self-executing. Legislation is not imperatively necessary to give it effect. It can not be said that it is a direction to the legislature. The tendency of modern decision is towards holding constitutional provisions self-executing. The rule and the reason for the rule is well stated by the supreme court of California in *Winchester* v. *Howard,* 136 Cal. 432 (64 Pac. 692, 69 Pac. 77, 89 Am. St. Rep. 153). It was there said:

"As to the question whether the provision is self-executing, it is well to note, at the outset, that the presumption is not precisely as it would have been had such a matter been presented for consideration fifty years ago. When the Federal Constitution and first State constitutions were formed, the idea of a constitution was, that it merely outlined a government, provided for certain departments and some officers and defined their functions, secured some absolute and inalienable rights to the citizens, but left all matters of administration and policy to the departments which it created. The law-making power was vested wholly

in the legislature.     Save as to the assurances of individual rights against the government, the direct operation of the constitution was upon the government only.     And such assurances were themselves in part but limitations upon governmental powers.

"Latterly, however, all this has been changed. Through distrust of the legislatures and the natural love of power, the people have inserted in their constitutions many provisions of a statutory character. These are in fact but laws, made directly by the people instead of by the legislature, and they are to be construed and enforced, in all respects, as though they were statutes.    *    *    *

"Under former conditions it was natural that the court should presume that a constitutional provision was addressed to some officer or department of the government, or that it limited the power of the legislature, or empowered, and perhaps directed, certain legislation, to carry into effect a constitutional policy.

"Now the presumption is the reverse.     Recently adopted State constitutions contain extensive codes of laws, intended to operate directly upon the people as statutes do.     To say that these are not self-executing may be to refuse to execute the sovereign will of the people.     The different policy requires a different ruling.     I should say the rule now is, that such constitutional provisions must be held to be self-executing when they can be given reasonable effect without the aid of legislation, unless it clearly appears that such was not intended."

While legislation may not be necessary to effectuate the constitutional provision and none may be validly enacted that is in conflict with it, it does not follow that legislation supplemental to and in aid of the constitutional provision may not be enacted.     This, I think, is settled by the text-writers and adjudicated cases.     In 12 C. J. p. 729 it is said:

"Constitutional provisions are self-executing when there is a manifest intention that they should go into immediate effect, and no ancillary legislation is necessary to the enjoyment of a right given, or the enforcement of a duty imposed.     That a right granted by a constitutional provision may be better or further pro-

tected by supplementary legislation does not of itself prevent the provision in question from being self-executing; nor does the self-executing character of the constitutional provision necessarily preclude legislation for the better protection of the right secured."

In 6 R. C. L. p. 58 it is said:

"Minor details, however, may be left for the legislature without impairing the self-executing nature of constitutional provisions. Thus it has been held that clauses defining the constituencies by which members of the general assembly shall be elected, and establishing the qualifications requisite for the right of suffrage, may be self-executing and self-sustaining, although there is left for legislative action the apportionment of members among the counties in a fixed ratio, and the making of regulations for holding elections, the canvassing of the votes, and the certification of the result. Similarly a constitutional provision is self-executing which provides that particular officials should be paid by salary instead of by fees, although the determination of the amount of the salary is left to the legislature."

The rule is thus stated in Cooley's Constitutional Limitations (7th Ed.), p. 121:

"A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced."

But the author in considering self-executing provisions of constitutions securing homestead exemptions on page 122 has this to say:

"Perhaps even in such cases, legislation may be desirable, by way of providing convenient remedies for the protection of the right secured, or of regulating the claim of the right so that its exact limits may be known and understood; but all such legislation must be subordinate to the constitutional provision, and in furtherance of its purpose, and must not in any particular attempt to narrow or embarrass it."

This is in consonance with the early holding of this

court in the case of *Beecher* v. *Baldy*, 7 Mich. 488, where this court, speaking through Mr. Justice CHRISTIANCY, said:

"We fully admit that the constitutional provision is an express prohibition against a forced sale on execution, of the homestead which it describes; and, as such prohibition, that it needs no legislation to give it effect. And if the tract out of which a homestead is claimed consist of a greater quantity, or be of greater value than allowed by the Constitution, yet if it be one which includes a constitutional homestead, and from which the right of selection is given, though further legislation might be necessary in order to enable the debtor to make a valid selection, it would be the duty of the court to protect the right, till such necessary legislation should be had; to see that the prohibition of the Constitution was not violated, and that no sale should be made under execution which would take away this constitutional right of selection. The neglect of the legislature, in such case, to perform its duty, would not authorize the courts to neglect theirs."

In the case of *Willis* v. *Mabon*, 48 Minn. 140 (50 N. W. 1110, 16 L. R. A. 281, 31 Am. St. Rep. 626), the court had before it a constitutional provision creating stockholders' liability. The provision did not expressly provide a remedy and it was insisted that it was not self-executing. The court held that the provision was self-executing and that it was not necessary that it should provide a remedy. After so holding, it was said:

"Hence in the present case it was not necessary that the constitution should have expressly given a remedy by which a creditor of the corporation might enforce the liability of a stockholder. If it in fact created such a liability of the latter in favor of the former, there would not be the least trouble in framing a proper complaint in an action to enforce it. Of course, the remedy is always within the control of the legislature, and may be changed as they see fit, provided only it remains adequate. It is entirely com-

petent for them to provide a new and statutory remedy, and make it exclusive, if they see fit."

The supreme court of Washington considered the right of the legislature to enact laws in aid of a self-executing constitutional provision in the case of *Reeves* v. *Anderson,* 13 Wash. 17 (42 Pac. 625), and it was there said:

"Nor do we think the contention that the constitutional provision is self-executing, and that legislative interference is unauthorized can be upheld. Certainly we should hesitate before declaring a solemn act of the legislature invalid upon any such ground. The act, as we have seen, is in harmony with the spirit of the constitution, and its object is to further the exercise of a constitutional right and make such right available. * * *
"In our opinion it was competent for the legislature to supplement the constitutional provision by pointing out the manner in which the right conferred by the constitution might be exercised, and by prescribing rules for the guidance of the city council in relation thereto."

In *State, ex rel. Caldwell,* v. *County Judge,* 22 Okla. 712 (98 Pac. 964), the supreme court of that State said:

"In cases where a provision is self-executing, legislation may still be desirable, by way of providing a more specific and convenient remedy and facilitating the carrying into effect or execution of the rights secured, making every step definite, and safeguarding the same so as to prevent abuses. Such legislation, however, must be in harmony with the spirit of the constitution, and its object to further the exercise of constitutional right and make it more available, and such laws must not curtail the rights reserved, or exceed the limitations specified."

And in *Nowakowski* v. *State,* 6 Okla. Crim. Rep. 123 (116 Pac. 351), it was said:

"It is not every self-executing provision of a constitution which exhausts legislative power upon the

subject with which it deals. There are many such where legislation in aid of or in addition to the provision is both permissible and desirable. Certainly the legislature can enact nothing in derogation of the constitutional provision; but unless such provision, in addition to being self-executing, is also a limitation upon the power of the legislature, it may enact laws in aid of and in addition to the provision and extending its terms."

In *State, ex rel. Shepard,* v. *Superior Court,* 60 Wash. 370 (111 Pac. 233), it was said:

"The right to vote is a constitutional right, given by the people to certain citizens and withheld from others. But the manner in which the franchise shall be exercised is purely statutory. It is not within the power of the legislature to destroy the franchise, but it may control and regulate the ballot, so long as the right is not destroyed or made so inconvenient that it is impossible to exercise it. It follows, then, that that which does not destroy or unnecessarily impair the right must be held to be within the constitutional power of the legislature."

In *Stevens* v. *Benson,* 50 Or. 269 (91 Pac. 577), that court had before it the question of whether the initiative and referendum provisions of the constitution of that State were self-executing and if so whether the legislature could pass supplementary legislation. It was held that the provisions were self-executing and that the legislation was valid. It was there said:

"But, when a provision of the constitution is self-executing, legislation may be desirable for the better protection of the right secured and to provide a more specific and convenient remedy for carrying out such provision, and it is plain that the statute in question was intended for that purpose, and reduces to a system and simplifies the proceeding; makes every step definite, as well as placing safeguards around it to protect it from abuse, without curtailing the right or placing any undue burdens upon its exercise."

See, also, *Gherna* v. *State,* 16 Ariz. 344 (146 Pac.

494, Ann. Cas. 1916D, 94) ; *State* v. *Romero,* 17 N. M. 81 (124 Pac. 649, Ann. Cas. 1914C, 1114).

In *Thompson* v. *Secretary of State,* 192 Mich. 512, where the referendum provisions of the Constitution were under consideration, this court pointed out the want of power in the secretary of State to prevent the filing of fraudulent petitions.   We there held that the provisions of the Constitution were self-executing and it was there said:

"The section of the Constitution under consideration is not a mere statement of principles.   On the contrary, it points out in detail the various steps to be taken in referring an act of the legislature to the electors, and undoubtedly intends that the conduct of the election and the canvass and return of votes shall be in accordance with the general laws of the State. And the legislature in its session of 1915 made certain amendments to the general election laws, with the evident purpose of adapting them more fully to the requirements of the referendum.   Perhaps further action by the legislature may be advisable in aid of the constitutional provision."

Act No. 204, Pub. Acts 1923, contains some of the provisions found in corrupt practice acts which have quite uniformly been upheld as proper aids to the honest exercise of the elective franchise, a right secured by the Constitution.   By section 3 verity of the petitions is required and the act in its entirety is the adoption of a public policy aiding and safeguarding the honest exercise of the rights secured by the Constitution and preventing fraudulent imposition on the secretary of State and the public generally.   It was not beyond the power of the legislature to enact it.

This leaves for consideration the question of whether the act is in conflict with section 21 of article 5 of the Constitution.   The title of the act is as follows:

"An act to require committees, clubs and other organizations formed for the purpose of initiating legislation or any constitutional amendment by petition, to

file certain reports and to regulate the conduct of such committees, clubs or organizations."

The assault upon the act on this ground is aimed particularly at section 3, which it is insisted is beyond the scope of the title.  If we construe this section to be applicable to all petitions, whether filed by committee, club or private individuals doubtless the section would fail under the authorities cited by plaintiff's counsel in their brief.   But the balance of the act would still be workable and would be valid.   If, on the other hand, we construe this section as limited by the title and only applicable to such petitions as are filed by committees, clubs and other organizations formed for the purpose of initiating legislation or constitutional amendments by petition, the section would be valid.   The rule is too well understood to need citation of authorities that where two constructions of a statute are equally permissible, one of which would render the act valid, and the other of which would render it invalid, that construction should be adopted which would give it validity.   Following this rule as we should we hold that section 3 is limited by the title and as so limited it is valid as against the objection here urged.

I think the writ should be denied.

WIEST, J., concurred with FELLOWS, J.

CLARK, C. J.   I concur in the result reached by Justice FELLOWS for the first reason discussed by him.

BIRD, J.   I am not in accord with the conclusions reached in this case by Mr. Justice FELLOWS.   He has considered at some length the question whether the proposed legislation violates the Federal Constitution.   I do not think this question should be considered and passed upon by this court at this time. If the proposed provisions do not receive the sanction

of the electorate it will be unnecessary to pass upon their validity.

Another reason suggests itself why we should not consider it. The same constitutional question was raised under similar circumstances on a petition heretofore filed by the same petitioner, and we refused to consider it until a situation arose which made it necessary. *Hamilton* v. *Secretary of State*, 212 Mich. 31. In refusing to consider the questions in that case it was said by Chief Justice MOORE:

"If the defendant in this case may decide whether the proposed amendment is constitutional and thus refuse to submit it, May he not in any case in which it is his judgment that the proposed amendment is unconstitutional decline to submit it? If he may exercise this power, is not he going much farther than his duties as a ministerial officer authorize him to go? If the proposed amendment should receive a majority of the legal votes cast, there will then be time enough to inquire whether any provision of the Federal Constitution has been violated. Until that time comes we must decline to express any opinion as to the unconstitutionality of the proposed amendment."

Mr. Justice SHARPE, who wrote a concurring opinion in that case, made the following observations:

"To exercise the power of judicial veto against the constitutionality of an amendment before its adoption or a law before its enactment finds no justification in necessity, and is an unwarranted assumption by the courts of the power reserved to the people in the Constitution or conferred by it on the legislature.

"The duty of the secretary of State is plainly prescribed. He 'shall submit all proposed amendments * * * initiated by the people for adoption or rejection in compliance herewith.' Upon the filing of the petition, the duty devolves on him to ascertain whether it complies with the constitutional requirements. He must canvass the same and determine whether it has been signed by the requisite number of qualified voters, and also whether it is in the form prescribed and is properly verified. There is no

provision that he shall determine whether the amendment contravenes any provision of the Federal Constitution, nor is he required or directed to submit such question to the attorney general for decision. The duty imposed is purely a ministerial one, and his performance of it is made mandatory by the express language of the provision which is italicized.   *   *   *

"In none of these cases do we find even a suggestion that in the performance of the ministerial duty imposed on him by the Constitution the defendant may decide a constitutional question. In determining whether the petition is sufficient in form and in ascertaining whether the names of a sufficient number of voters are signed thereto, he may be required to interpret the language of the constitutional provision, but it is a novel proposition in the science of jurisprudence to say that he may pass upon the constitutionality of the amendment proposed.   *   *   *

"This court has no express or implied power by judicial veto to nullify *in futuro* a prospective law fore-shadowed by a properly introduced bill before the legislature, nor, by analogy, a proposed amendment of the Constitution properly presented by petition for the electors to pass upon. In our opinion it is neither the duty nor the right of this court in this proceeding to pass upon the constitutionality of this amendment which has not been, is not now, and never may become a part of our Constitution."

Some very cogent reasons for refusing to consider the question at this time can be found in Mr. Justice FELLOWS' opinion in *Anway* v. *Railway Co.*, 211 Mich. 592 (12 A. L. R. 26). Since these opinions were written in October, 1920, the conditions are unchanged, and no reason appears why we should now reach any other or different conclusion.

Plaintiff argues that the constitutional provisions with reference to the initiative are self-executing and need no supplemental legislation to make them workable. It is, therefore, contended that Act No. 204, Pub. Acts 1923, is without force. This court has held on two former occasions that these constitutional provisions were self-executing. *Thompson* v. *Secre-*

*tary of State,* 192 Mich. 512; *Hamilton* v. *Secretary of State,* 221 Mich. 541.    And Mr. Justice FELLOWS concedes they are self-executing.    In view of this, it will be unnecessary to consider further this aspect of the case.    Mr. Justice FELLOWS, however, argues, and cites some authority in support thereof, that even though the provisions are self-executing the legislature has the right to supplement them by throwing safeguards around them to protect their operation from fraud and dishonesty.    Conceding for the purpose of the argument that the legislature has this right, if, in so doing, it amends or annexes additional burdens to the operation as outlined in the Constitution then such provisions are in conflict with the Constitution and are void.    The cases cited go no farther than this. If they go beyond this the legislation is void.    *Louisville, etc., R. Co.* v. *Commonwealth,* 104 Ky. 226 (46 S. W. 707, 47 S. W. 210, 598, 43 L. R. A. 541).    It is said in *State, ex rel. Caldwell,* v. *County Judge,* 22 Okla. 712 (98 Pac. 964), that:

"The only limitation, unless otherwise expressly indicated, on legislation supplementary to self-executing constitutional provisions is that the right guaranteed shall not be curtailed or any undue burdens placed thereon."

If we consider this to be the proper view of the law then we must examine the provisions of Act No. 204, Pub. Acts 1923, and determine whether they amend or add additional burdens to those imposed by the constitutional provision.

The prerequisites prescribed by section 2, article 17, are:

1. The petition shall include the full text of the proposed amendment, be signed by not less than ten per cent. of the qualified voters of the State, and be filed with the secretary of State.

2. The petition shall consist of sheets in such form and being printed or written at the top thereof such

heading as shall be designated or prescribed by the secretary of State.

3. Such petition shall be signed by qualified voters in person only with the residence address of such persons and the date of signing the same.

4. To each of such petitions, which may consist of one or more sheets, shall be attached the affidavit of the electors circulating the same, stating that each signature thereto is the genuine signature of the person signing the same, and that to the best knowledge and belief of the affiant each person signing the petition was at the time of signing a qualified elector.

When these requirements are complied with the petitioner is entitled to have the question submitted to the electorate.

If the provisions of Act No. 204 are to be complied with the prerequisites are:

(a) It shall be unlawful for any committee, club or other organization to circulate, or cause to be circulated, any petition to initiate legislation, or for any constitutional amendment without first having filed with the secretary of State a certificate subscribed and sworn to by the secretary and president of such committee, club or other organization, setting forth the purpose of such committee, club or organization, and the name and address of each of the officers thereof, and of each of the separate units or branches thereof.

(b) Before any petition for any constitutional amendment shall be filed with the secretary of State it shall be presented to the proper city, village or township clerk or clerks.

(c) Whose duty it shall be to compare the names appearing thereon as being the names of qualified legal voters, residing in such clerk's city, village or township, with the registration book in his office.

(d) And to attach to said petition his certificate to the effect that he has made such comparison, and that the persons whose names appear thereon are qualified legal voters of his city, village or township, as the case may be.

(e) Or if the said clerk finds that some of the names appearing thereon are not the names of qualified legal

voters of his city, village or township, he shall certify to such fact, naming such persons.

(*f*) Within twenty days after the filing of any petition to initiate legislation, or for a constitutional amendment, the committee, club or organization having charge of the circulation thereof, shall file with the secretary of State a full, true and detailed account, and statement subscribed and sworn to by the treasurer thereof, setting forth each and every sum of money received or disbursed by the said committee, club or organization, or by any unit or branch thereof for such purpose, the date of each receipt, the name of the person from whom received, or to whom paid, and the object or purpose for which disbursed.

(*g*) Such statement shall also set forth the unpaid debts and obligations, etc.

(*h*) The secretary of State shall furnish to such committees, clubs and other organizations blanks in form approved by the attorney general, suitable for the statements hereinbefore required.

*a.* Section 1 of Act No. 204 makes a distinction between individuals and committees, clubs and other organizations.    The constitutional provision makes no distinction.    If individuals, with the help of one committee, should secure the requisite number of names, and the committee should fail to comply with section 1, the secretary of State would probably be justified in refusing to submit the petition.    This is a requirement not mentioned in the constitutional provisions, and is clearly an additional burden imposed on those who are circulating the petitions.

*b, c, d,* and *e.*    These prerequisites are clearly an amendment by substitution and they impose added duties, and also impose an expenditure of money which the constitutional provisions do not require.    The Constitution provides that the affidavit of one who circulates the petition that they were signed by qualified voters will suffice.    Act No. 204 says that is not sufficient, you shall present the petitions to the several hundred clerks of the several cities, villages and town-

ships in the State, and they shall compare them with the registration lists. Is this not an attempt to amend the Constitution by legislation and substitute the will of the legislature? And is it not clear that the legislative provisions impose an additional burden on those who have charge of the petitions? If the petitions are to be submitted to the several hundred clerks and their certificates obtained after a search, who is to pay for these services, and how much shall they be paid. Suppose the petitions were signed by 100,000 people in the city of Detroit, and they should afterwards be submitted to the city clerk, who will do the work, and how long will it take to do it? And suppose the clerk refuses to make the search and certify unless someone will become liable for the fees. If no one offers to become liable, and the names are not certified, will the secretary of State refuse the petition for this reason? Is not this an additional burden imposed by the legislature on those who are desirous of amending the Constitution in this way?

*f, g* and *h.* These requirements are not very important, but they are likewise additional burdens not imposed by the constitutional procedure.

It will be noted that the constitutional provision requires the petition to be signed by *qualified* persons. The legislative requirement is that the persons signing must be *qualified legal* voters. Under the constitutional procedure a young man or woman who had reached his or her majority upwards of four months before election would be qualified to sign the petition. Under the legislative procedure they would not be qualified unless they were also registered voters, as well as qualified voters. The legislative qualification would, therefore, disqualify thousands of new voters from signing the petitions, who would be entitled to sign under the constitutional procedure. This would likewise be true of the thousands of voters who had changed voting precincts since the last election. But

it may be argued that qualified voters and qualified legal voters mean the same thing.   The answer to this is if the legislature had not intended to prescribe a different qualification, why did it inject the word "legal" in addition to the qualification prescribed by the constitutional procedure? *  This is clearly a legislative amendment and is an unjust discrimination against the new voters and against those who have changed their voting precincts since the last election.

This court has on two occasions indicated to what extent the constitutional provision under consideration might be affected by legislative acts.

"The constitutional provision contains procedural rules, regulations and limitations; it maps the course and marks the way for the accomplishment of an end; it summons no legislative aid and will brook no elimination or restriction of its requirements, it grants rights on conditions expressed, and if its provisions are complied with and its procedure followed its mandate must be obeyed.   Its provisions are prospective in operation and self-executing."   *Hamilton* v. *Secretary of State,* 221 Mich. 541.

"Of the right of qualified voters of the State to propose amendments to the Constitution by petition, it may be said, generally, that it can be interfered with neither by the legislature, the courts, nor the officers charged with any duty in the premises.   But the right is to be exercised in a certain way and according to certain conditions, the limitations upon its exercise, like the reservation of the right itself, being found in the Constitution."   *Scott* v. *Secretary of State,* 202 Mich. 643.

If we are still in accord with these expressions it would seem improbable that we can now approve legislation which eliminates important parts of the constitutional rule and substitute therefor the legislative rule for amending the Constitution.   It is perhaps true that the constitutional provisions giving force to the initiative and referendum are innovations

227—Mich.—9.

in representative government.   They are here, however, and are a part of the organic law of the State and must be respected.   The initiative found its birth in the fact that political parties repeatedly made promises to the electorate both in and out of their platforms to favor and pass certain legislation for which there was a popular demand.   As soon as election was over their promises were forgotten, and no effort was made to redeem them.   These promises were made so often and then forgotten that the electorate at last through sheer desperation took matters into its own hands and constructed a constitutional procedure by which it could effect changes in the Constitution and bring about desired legislation without the aid of the legislature.   It was in this mood that the electorate gave birth to the constitutional provision under consideration.   In view of this I am persuaded that it was not the intention of the electorate that the legislature should meddle in any way with the constitutional procedure to amend the State Constitution. It was fittingly said in the following cases that:

"A constitutional provision designed to remove an existing mischief should never be construed as dependent for its efficacy and operation on legislative will."   *Morley* v. *Thayer*, 3 Fed. 737; *People* v. *Rumsey*, 64 Ill. 44; *Brien* v. *Williamson*, 7 How. (Miss.) 14.

My conclusion is that in so far as Act No. 204 amends or is in conflict with the constitutional procedure for amending the Constitution, and in so far as it adds additional burdens to the constitutional procedure it is void and must give way to the procedure prescribed by the Constitution.   I am, therefore, in favor of issuing the writ prayed for by plaintiff, but without costs.

SHARPE, J., concurred with BIRD, J.   McDONALD, MOORE, and STEERE, JJ., concurred in the result.